**FILED**

**JANUARY 10, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**08 C 243**

| | | |
|---|---|---|
| **ROSA PEREZ,** | ) | |
| Plaintiff, | ) | Case No. |
| **v.** | ) | |
| | ) | |
| **WL ROSS & CO. LLC**, Individually and | ) | |
| as Successor in Interest to | ) | |
| **AMERICAN HOME MORTGAGE CORP.**; | ) | |
| **HLB MORTGAGE**, and | ) | |
| **PROFESSIONAL MORTGAGE, Inc.** | ) | |
| Defendants. | ) | Jury Demand |

**JUDGE KENNELLY**
**MAGISTRATE JUDGE COLE**

### I. Nature of Complaint

Plaintiff Rosa L. Dailey brings this action to correct an egregiously harmful, sub-prime, home-loan scheme, instigated by a mortgage broker, PROFESSIONAL MORTGAGE, for a sub-prime mortgage loan originated by HLB MORTGAGE before its ceased business operations. The loan was then purchased or assumed by AMERICAN HOME MORTGAGE CORP. before it declared bankruptcy, and was purchased by WL ROSS & Co., LLC

### II. Jurisdiction and Venue

1. This court has subject matter jurisdiction pursuant to RESPA, 12 USC §§2607 *et seq.*, and accompanying federal regulations, 24 CFR §35.00.14©, 28 USC §1331; TILA, 15 USC §1601, *et seq.*, 12 CFR §226.18, and Regulation "Z," @ 226.18(d), HOEPA, 15 U.S.C. §1638 *et seq.;* pursuant to the Court's supplemental jurisdiction, 28 U.S.C. §1357, the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act" or "CFA"), 815 ILCS §505/1 *et seq.*; and Illinois common law.

2. Venue is proper as the plaintiff resides in, each defendant does business and has or has

had major places of business in, many of the acts complained of occurred in, and the property in question is located within the district and division of this court. Defendants, individually and through subsidiaries, regularly file or have filed collection and foreclosure actions in the federal and state courts of Illinois.

### III.  The Parties

3.  Plaintiff **ROSA PEREZ**, a native of Guatemala now residing in the United States, is a married mother of young children. She speaks and reads English haltingly as a second language and is unschooled, unsophisticated, and inexperienced in ways of finance, deeds, home improvement loans, mortgages, and unlawful schemes and practices connected with them. At all times relevant to this complaint, she was unemployed or only sporadically employed and is now being dunned by the current assignee of the mortgage at issue over $1,300 per month. At all times relevant to this complaint, Rosa Perez has lived in her principal and only residence, a single-family home, at 14516 Trumbull Avenue, Midlothian, Illinois 60445 (the "Perez property").

4.  Defendant **WL Ross & Co. LLC,** is a foreign corporation with a principal place of business at 1166 Avenue of the Americas, New York, NY 10036. A subsidiary of Invesco, this company specializes in improving the financial condition of distressed businesses. At a date presently unknown, WL Ross purchased, was assigned or assumed the loan portfolio of American Home Mortgage Corp., including the mortgage loan at issue. As a successor in interest to the current loan at issue, a loan whose defects are plain on the face of the loan documents, WL Ross & Co., is subject to all causes of action which can be brought against the originator of the mortgage loan .

2

5. Defendant **AMERICAN HOME MORTGAGE CORP**. is a Delaware corporation which, prior to filing for bankruptcy, as parent company, had assumed the servicing of mortgage loans from its subsidiary, American Home Mortgage Servicing whose address is, or was, P.O. Box 631730, Irving, Texas 75063-1730. At a date presently unknown, American Home Mortgage Corporation purchases, was assigned or assumed the loan portfolio of HLB MORTGAGE.

6. Defendant **HLB MORTGAGE,** the originator of th mortgage loan at issue, is a foreign corporation which has or has had a principal place of business at 4650 Regent Blvd., Suite 100, Irving, Texas 75063-2250. HLB Mortgage is a division of American Home Mortgage. A recent posting on its website states that HLB Mortgage has shut down all operations and all servicing of its loans is being done by its corporate parent, American Home Mortgage Servicing.

7. Defendant **PROFESSIONAL MORTGAGE, Inc.,** an Illinois corporation with a principal place of business at 5617 West Cermak Road, Cicero, Illinois 60804, acted as the mortgage broker for the loan at issue. Its branch manger is Lilia Chairez.

IV. <u>Statement of Facts and Causes of Action</u>

## FIRST CAUSE OF ACTION
### Broker Premium Violates RESPA

8. Plaintiff incorporates into this first cause of action, paragraphs 1 through 7 of this complaint

9. On January 11, 2007, Plaintiff Rosa Perez borrowed $193,500 from Defendant HLB Mortgage, secured by the Perez property, to re-finance an earlier, home purchase loan (the "transaction").

3

10.  Defendant Professional Mortgage acted as a mortgage broker for the transaction.

11.  At the time of the closing of the transaction, Defendant HLB Mortgage charged

Plaintiff Perez fees, more fully shown on Exhibit A to this complaint, listed as follows (with

enumeration as on the HUD-1 form):

806.  BROKER PREMIUM…to PROFESSIONAL MORTGAGE...POC   $4,595.63L
807.  BROKER PROCESSING FEE to PROFESSIONAL MORTGAGE...........495.00
808.  COMMITMENT FEE to HLB MORTGAGE.............................................650.00

12.  On or about the same date of the closing at issue as described above, the title

company for the mortgage loan at issue, Commercial Land Title, wired instructions for the

transfer of funds for the transaction.   Ex. B, "Addendum A," "Closing Costs/Wire Transfer

Information."

13.  The wire transfer information indicates that the broker premium of $4,595.63 was

a fee added on to the total amount Plaintiff Perez would be required to pay HLB Mortgage.Ex. B.

14.  No defendant before, during or after the closing for the loan as described above on

January 11, 2007, informed or disclosed to Mrs. Perez the existence or purpose of the "broker

premium" (identified at line 806 of Exhibit A, attached, and paragraph 10, above, and on Ex. B).

Furthermore, no defendant requested or received from or even discussed with her permission to

be charged for any service, good or facility which Defendant HLB Mortgage had offered to

Defendant Professional Mortgage, a mortgage broker.

15.  Defendant HLB Mortgage's purpose in offering this payment to Defendant

Professional Mortgage, as described above, and as defendants agreed to among themselves, was

to reduce or eliminate price competition in the broker-sourced mortgage loan market.  The

"broker premium" [more commonly referred to as a "yield spread premium"] was a payment made by HLB Mortgage to Professional Mortgage in exchange for their bringing to HLB Mortgage a borrower, Mrs. Perez, who would be induced by defendants to pay an adjustable, higher-than-market interest rate for her loan, to pay inflated fees for services, and to pay for duplicative services that would be added to the amount financed.

16.   The broker premium HLB Mortgage paid to Professional Mortgage was a duplicative fee of $4,595.83 for whatever services Professional Mortgage might have provided Mrs. Perez, identified as "BROKER PROCESSING FEE to PROFESSIONAL MORTGAGE," for $495.00, at line 807 of paragraph 11, above.

17.   Mrs. Perez received no compensable good, service or facility for the broker premium, collected by HLB Mortgage and paid to Professional Mortgage, which was not included in the goods, services and facilities she paid to HLB Mortgage, as listed above in paragraph 11.  Therefore, the broker premium was a duplicative payment and in excess of the fair market value of, and not reasonably related to, any goods, services or facilities provided.

18.   HLB Mortgage set the interest charged plaintiff higher than "par" (par is the base interest rate at which a lender makes a loan on a particular date) in order to offset its payment of the broker fees to Professional Mortgage.

19.   No defendant ever informed Mrs. Perez that the interest rate HLB Mortgage would charge was or would be increased to offset the broker fees it paid to Professional Mortgage; neither did Mrs. Perez agree to pay the above-par rate in exchange for any good, service or facility; and neither did Mrs. Perez knowingly sign any statement or contract indicting that she would be charged a yield spread premium or a "broker premium" in exchange for any goods,

services or facilities offered by any defendant.

20.  Each fee HLB Mortgage charged plaintiff, as listed in paragraph 11, is duplicative of the fee paid for any service covered by the yield spread premium; therefore, each is unearned, inflated, and bears no reasonable relationship to services proved, and is in violation of Section 8 of RESPA, 12 USC §§ 2607(a)(b), and of 24 CFR§§ 3500.14 (a)(b).

## SECOND CAUSE OF ACTION
### Broker Premium Is a Prohibited Referral Fee

21.  Plaintiff repeats and realleges paragraphs 1-20.

22. The Broker Premium paid by HLB Mortgage to Professional Mortgage, and then added on to the total amount borrowed by Mrs. Perez, as identified above, was a payment for no goods, services or facilities provided by HLB Mortgage or was in excess of the fair marker value of any goods, services or facilities provided.  The broker premium could not and did not reflect the fair market value of any service.

23.  The broker premium as identified above, $4,595.83 paid by HLM Mortgage to Professional Mortgage, and then added on to the amount borrowed, was not paid in exchange for quality or quantity of services and unnecessarily and unreasonably increased the costs of settlement services.  The broker premium was a kickback or payment to a mortgage broker for the referral of Mrs. Perez, in violation of Section 8 of RESPA, 12 USC §§ 2601(b)(2), 2607(a)(b), and of 24 CFR §3500.14.

## THIRD CAUSE OF ACTION
### Defendants Charged Inflated, Duplicative Fees in Violation of RESPA

24.  Plaintiff repeats and realleges paragraphs 1-23

25. Line 801 of the HUD-1 Settlement Form is to be used to record the fee charged by

6

the Lender for processing or originating the loan.  24 CFR Ch. XX (4-1-99) Edition, Pt. 3500,

App. A.

26.  As indicated on Line 801 of the HUD-1, HLB Mortgage charged Mrs. Perez no

"Loan Originating fee."

27.  Instead, as indicated on Line 808 of the HUD-1, HLB Mortgage charged Mrs. Perez

something referred to as a "COMMITMENT FEE," for $650.00."

28.  The"Commitment fee," as described, was an unearned, inflated fee which bears no

reasonable relationship to any service provided, and is in violation of Section 8 of RESPA, 12

USC §2607(b), and of 24 CFR §3500.14(b).

## FOURTH CAUSE OF ACTION
## TILA

29.  Plaintiff repeats and realleges paragraphs 1-28

30.  Rosa Perez is a native of Guatemala and speaks and reads English imperfectly as a

second language.

31.  As the time of the closing of the mortgage loan described above, Rosa Perez was

unemployed and was receiving no income whatsoever.  Since the closing and to the present date,

Mrs. Perez occasionally has worked part-time but has never received more than a few hundred

dollars per month.

42.  At the time if the closing described above, Rosa Perez' husband was unemployed and

temporarily residing in Guatemala.

33.  Immediately prior to the closing of the mortgage loan at issue, an agent for the

mortgage broker, Lilia Chaired, the branch manger of Defendant Professional Mortgage,

convinced Mrs. Perez to agree to a mortgage loan with an adjustable rate of 1%–a rate which
would require Mrs. Perez to pay only about $193.50 monthly, a rate she was persuaded to accept
as an amount she could afford even with no actual income.

34.   What the mortgage broker did not explain to Mrs. Perez., and what she never
understood or knowingly agreed to, was after only approximately three weeks her 1% rate would
adjust to about 8%, and her monthly payments would increase to $622.37–a rate that Mrs. Perez
could never afford and a rate which would guarantee that the loan would fail, or that the rate
would again increase to over $1,300 per month.

35. In addition, neither the mortgage broker nor any defendant explained to Mrs. Perez
that the note she had signed, which contained a section in bold print which confirmed the right of
the borrower to pre-pay the note without penalty [Ex. C at paragraph 5, attached] was amended
by an addendum which stated that any partial or full prepayment would require the borrower to
pay a very sizeable, expensive penalty.

36.   Plaintiff Perez never  never understood or knowingly agreed to the provisions in the
Addendum to Note, attached as Ex. C.

37.   Each defendant failed to disclose to Mrs. Perez prior to or at the closing of her loan,
the actual cost of the credit and the nature of the terms of credit offered to her, including
description of the components of finance charges and the material terms of her loan, the rate or
effective rate of interest, the period, the schedule of amounts to be repaid, pre-payment
provisions, or any other term of each loan or credit, including her right to cancel, and each failed
to give her a copy of a TILA statement at least three days prior to the closing of each loan, all in
violation of TILA, 15 USC §1639.

## FIFTH CAUSE OF ACTION
**Fraud**

38. Plaintiff repeats and realleges paragraphs 1-37.

39. As more specifically set forth in all causes of action described above, at specific times and places as indicated in the individual causes of action, defendants agreed among themselves and fraudulently concealed from Mrs. Perez the following material facts:

     a. they were charging Mrs. Perez a broker premium;

     b. her costs for the settlement of her loans with defendants were duplicative and inflated to offset the payment of the broker premium and to enrich themselves;

     c. the interest rate for her mortgage loan would be increased to pay for the broker premium and to enrich themselves;

     d. the "teaser" interest rate of 1% would be increased within one month to an annual percentage rate which she could never afford to pay;

     e. that she, in effect, would be prohibited from re-financing the mortgage loan due to the pre-payment penalties contained in the addendum to the note.

40. Defendants further intentionally, knowingly and recklessly misrepresented that they were offering Mrs. Thomas a loan at competitive prices when, in fact, the settlement charges and interest were set and agreed to among the defendants at an artificially high rate and were not reasonably related to any goods, services or facilities provided.

41. Rosa Perez was deceived by defendants, she justifiably relied on the willful misrepresentations of defendants, and was induced to rely on the misrepresentations to her detriment.

42. Defendants' conduct was knowing, intentional and with malice, demonstrated complete lack of care, and was in conscious disregard of plaintiff's rights. Therefore, Rosa Perez is entitled to an award of punitive damages from defendants.

### SIXTH CAUSE OF ACTION
### Conspiracy

43. Plaintiff repeats and realleges paragraphs 1-42.

44. Upon information and belief, defendants, at specific times and places as indicated in the individual counts of this complaint, entered into a conspiracy with one another and their agents to defraud Ms. Perez by concealing the existence and cost of the broker premium, by increasing the above-par interest rate, by padding settlement costs, by amended the note to add a pre-payment penalty, all to enrich themselves and to provide themselves with unearned fees. These misrepresentations, omissions and conspiratorial acts, which are more fully set forth above and below, were to the detriment of Mrs. Perez because they prevented her from questioning the high rates and charges for her loans and forestalled legal action or otherwise.

### SEVENTH CAUSE OF ACTION
### Illinois Consumer Fraud & Deceptive Practices Act

45. Plaintiff repeats and realleges paragraphs 1-44 as if fully repeated here.

46. The Illinois Consumer Fraud & Deceptive Practices Act ("ICFA"), 815 ILCS Sec. 505.2, provides:

> Unfair methods . . and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentations or the concealment, suppression or omission of any material fact, with intent that others rely upon [the same] . . . are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the

federal Trade Commission Act.

47.  Defendants engaged in deception, consumer fraud, false pretense, false promise, misrepresentation and concealment, by intentionally, knowingly and recklessly misrepresenting that they were offering Mrs. Perez the best available loan at competitive prices.  In fact, the settlement charges, duplicative fees, and interest for the loan were set and agreed to among the defendants at an artificially high rate and were not reasonably related to any goods, services or facilities provided, and other members of the class were similarly misrepresented, as alleged above.  Such action was willful, for pecuniary gain at the expense of Mrs. Perez, and are in violation of 815 ILCS Sec. 505.2.

48.  Defendants engaged in deception, consumer fraud, false pretense, false promise, misrepresentation and concealment in violation of 815 ILCS Sec. 505.2.

**V.  Jury Demand**

49.  Plaintiff demands trial by jury.

WHEREFORE, Plaintiff Rosa Perez requests that this court enter judgment in her favor and enter such judgment as to include statutory, compensatory, punitive and exemplary damages, attorney fees, litigation expenses, including fees for expert witnesses, and costs for each cause of action in this complaint, and that the court enjoin such future wrongful acts as committed by the defendants, and that the court grant such other and further relief as is just.

_____
William F. Spielberger
Plaintiff's Attorney

William F. Spielberger & Associates, PC
53 W. Jackson Blvd., Suite 1231
Chicago, IL  60604
(312) 8934-0519

11

**A.**

**U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT**

**SETTLEMENT STATEMENT**

**B. TYPE OF LOAN:**
1. ☐ FHA  2. ☐ FmHA  3. ☒ CONV. UNINS.  4. ☐ VA  5. ☐ CONV. INS.

6. FILE NUMBER: LT-63010   7. LOAN NUMBER: 0001574545

8. MORTGAGE INS CASE NUMBER:

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.
1.0  3/06  (LT-63010.PFD/LT-63010/18)

**D. NAME AND ADDRESS OF BORROWER:**
ROSA PEREZ
14516 TRUMBULL AVE
MIDLOTHIAN, ILLINOIS 60445

**E. NAME AND ADDRESS OF SELLER:**

**F. NAME AND ADDRESS OF LENDER:**
HLB MORTGAGE
538 BROADHOLLOW RD
MELVILLE, NY 11747

**G. PROPERTY LOCATION:**
14516 TRUMBULL AVE
MIDLOTHIAN, IL 60445
COOK County, Illinois
28-11-217-016-0000

**H. SETTLEMENT AGENT:** 36-4469604
COMMERCIAL LAND TITLE INSURANCE CO.

PLACE OF SETTLEMENT
134 NORTH LASALLE, SUITE 2000
CHICAGO, ILLINOIS 60602

**I. SETTLEMENT DATE:**
January 11, 2007
Disburse:01/16/07

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 4,237.25 | 403. | |
| 104. Payoff first mortgage to WILSHIRE CREDIT CORP/6708 | 135,997.86 | 404. | |
| 105. Payoff second mortgage to CITIBANK/2712811385 | 25,533.31 | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/town Taxes to | | 406. City/town Taxes to | |
| 107. County Taxes to | | 407. County Taxes to | |
| 108. Assessments to | | 408. Assessments to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 165,768.42 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See instructions) | |
| 202. Principal Amount of New Loan(s) | 193,500.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/town Taxes to | | 510. City/town Taxes to | |
| 211. County Taxes to | | 511. County Taxes to | |
| 212. Assessments to | | 512. Assessments to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 193,500.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 165,768.42 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 193,500.00) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| **303. CASH ( FROM )( X TO ) BORROWER** | 27,731.58 | **603. CASH ( TO )( FROM ) SELLER** | 0.00 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.
I HAVE CAREFULLY REVIEWED THE HUD-1 SETTLEMENT STATEMENT AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE AND ACCURATE STATEMENT OF ALL RECEIPTS AND DISBURSEMENTS MADE ON MY ACCOUNT OR BY ME IN THIS TRANSACTION. I FURTHER CERTIFY THAT I HAVE RECEIVED A COPY OF THE HUD-1 SETTLEMENT STATEMENT.

Borrower _Rosa Perez_   Seller
ROSA PEREZ

TO THE BEST OF MY KNOWLEDGE, THE HUD-1 SETTLEMENT STATEMENT WHICH I HAVE PREPARED IS A TRUE AND ACCURATE ACCOUNT OF THE FUNDS WHICH WERE RECEIVED AND HAVE BEEN OR WILL BE DISBURSED BY THE UNDERSIGNED AS PART OF THE SETTLEMENT OF THIS TRANSACTION.
COMMERCIAL LAND TITLE INSURANCE CO.
Settlement Agent

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE: TITLE 18 U.S. CODE SECTION 1001 & SECTION 1010.

EXHIBIT
A

| | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| **700. TOTAL COMMISSION Based on Price** | $ | @ % | | |
| *Division of Commission (line 700) as Follows:* | | | | |
| 701. $ | to | | | |
| 702. $ | to | | | |
| 703. Commission Paid at Settlement | | | | |
| 704. | to | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | |
| 801. Loan Origination Fee | % | to | | |
| 802. Loan Discount | % | to | | |
| 803. Appraisal Fee | to | | | |
| 804. Credit Report | to | | | |
| 805. Lender's Inspection Fee | to | | | |
| 806. BROKER PREMIUM | to PROFESSIONAL MORTGAGE | POC $4,595.83L | | |
| 807. BROKER PROCESSING FEE | to PROFESSIONAL MORTGAGE | | 495.00 | |
| 808. COMMITMENT FEE | to HLB MORTGAGE | | 650.00 | |
| 809. | | | | |
| 810. | | | | |
| 811. | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. Interest From 01/17/07 to 02/01/07 @ $ /day ( 15 days %) | | | 80.63 | |
| 902. Mortgage Insurance Premium for months to | | | | |
| 903. Hazard Insurance Premium for 1.0 years to | | | | |
| 904. | | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | |
| 1001. Hazard Insurance | 2.000 months @ $ 51.41 per month | | 102.82 | |
| 1002. Mortgage Insurance | months @ $ per month | | | |
| 1003. City/town Taxes | months @ $ per month | | | |
| 1004. County Taxes | 7.000 months @ $ 170.87 per month | | 1,194.69 | |
| 1005. Assessments | months @ $ per month | | | |
| 1006. | months @ $ per month | | | |
| 1007. AGGREGATE ADJ | months @ $ per month | | -51.41 | |
| 1008. | months @ $ per month | | | |
| **1100. TITLE CHARGES** | | | | |
| 1101. Settlement or Closing Fee | to COMMERCIAL LAND TITLE INSURANCE CO. | | 200.00 | |
| 1102. Abstract or Title Search | to COMMERCIAL LAND TITLE INSURANCE CO. | | | |
| 1103. AFTER HOURS CLOSING FEE | to LAWYERS TITLE INSURANCE CORPORATION | | 105.00 | |
| 1104. Title Insurance Binder | to | | | |
| 1105. Document Preparation | to | | | |
| 1106. CANCELLATION FEE | to | | | |
| 1107. Attorney's Fees | to ZAMPARO & LABOW, PC. | | | |
| *(includes above item numbers:* | ) | | | |
| 1108. Title Insurance | to COMMERCIAL LAND TITLE INSURANCE CO. | | 100.00 | |
| $20.00 to LAWYERS TITLE INSURANCE CORPORATION, $80.00 to COMMERCIAL LAND TITLE I | | | | |
| *(includes above item numbers 1102 and 1103* | ) | | | |
| 1109. Lender's Coverage | $ 193,500.00 | | | |
| 1110. Owner's Coverage | $ | | | |
| 1111. SHIPPING AND HANDLING FEE | to COMMERCIAL LAND TITLE INSURANCE CO. | | 55.00 | |
| 1112. LATE/DATE/SEARCH FEE | to COMMERCIAL LAND TITLE INSURANCE CO. | | 100.00 | |
| 1113. EPA, LOC ENDSMT | to COMMERCIAL LAND TITLE INSURANCE CO. | | 100.00 | |
| 1114. TAX PROCESSING FEE | to COMMERCIAL LAND TITLE INSURANCE CO. | | 55.00 | |
| 1115. | | | | |
| 1116. | | | | |
| 1117. | | | | |
| 1118. | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. Recording and Processing Fees: Deed $ | Mortgage: $ 58.50 Releases $ | | 58.50 | |
| 1202. City/County Tax/Stamps: Deed | ; Mortgage | | | |
| 1203. State Tax/Stamps: Revenue Stamps | ; Mortgage | | | |
| 1204. REC. ASSIGNMENT OF MTG. | COMMERCIAL LAND TITLE INSURANCE CO. | | | |
| 1205. RENTAL HOUSING SURCHARGE | to COMMERCIAL LAND TITLE INSURANCE CO. | | 10.00 | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. Survey | to | | | |
| 1302. Pest Inspection | to | | | |
| 1303. 1ST INST 2006 TAXES | to COOK COUNTY | | 1,024.02 | |
| 1304. State of Illinois Policy fee | to LAWYERS TITLE INSURANCE COMPANY | | 3.00 | |
| 1305. | | | | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | | 4,282.25 | |

COMMERCIAL LAND TITLE INSURANCE CO.
Settlement Agent

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

Borrower: ROSA PEREZ
Lender: HLB MORTGAGE
Settlement Agent: COMMERCIAL LAND TITLE INSURANCE CO.
(312)739-0411
Place of Settlement: 134 NORTH LASALLE, SUITE 2000
CHICAGO, ILLINOIS 60602
Settlement Date: January 11, 2007
Disbursement Date: January 16, 2007
Property Location: 14516 TRUMBULL AVE
MIDLOTHIAN, IL 60445
COOK County, Illinois
28-11-217-016-0000

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____
ROSA PEREZ

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____
COMMERCIAL LAND TITLE INSURANCE CO.
Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(LT-63010.PFD/LT-63010/18)

ADDENDUM A

Closing Costs/Wire Transfer Information:                    Application #: 0001574545

Borrower and Property Information:
Borrower(s):                              Property:
(M,N)   Rosa Perez                        14516 Trumbull Ave
                                          Midlothian,IL 60445


Title Company:                            Settlement Agent:
COMMERCIAL LAND TITLE                     Commercial Land Title Insurance Co.
134 N LASALLE ST                          134 N. LaSalle Street
#2000                                     Ste 2000
Chicago,IL 60602                          Chicago,IL  60602
Contact: CLOSING DEPT.                    Contact:  CLOSING DEPT.
Telephone: (312) 739-0411                 Telephone: (312) 739-0411
Fax:                                      Fax:  (312) 739-1112


Wire Instructions:
Financial Institution:        MB Financial Bank
ABA #:                        071001737
Account Name:                 Commercial Land Title Insuranc
Account #:                    1640000178
Attention:                    RE: LT-63010

IMPORTANT:  If you do not receive the wire, please call the Treasury Help Desk at
1-866-226-1997. - ALL OTHER QUESTIONS RELATING TO THE FUNDING should be directed to Sara
Misiak at 630-245-5085 ext. 000-000-0000.

At the time of closing the following fees are due and have been deducted from the loan
amount.

| Fee Section: | Total Fee | Borrower | Seller | Vendor |
|---|---|---|---|---|
| Commitment Fee | $650.00 | 650.00 | .00 | HLB Mortgage |
| Prepaid Int.(015 Days) | $80.63 | 80.63 | .00 | HLB Mortgage |
| TOTAL FEES: | $730.63 | | | |
| LESS POC/COUPONS/CREDITS: | | | | |
| Paid on Account | $0.00 | | | |
| TOTAL PREPAIDS | $0.00 | | | |
| | | | | |
| TOTAL DUE: | $730.63 | | | |

Escrow Breakdown:

| | | | |
|---|---|---|---|
| State/County Tax | 7 mos @ $170.67 | $1,194.69 | |
| Haz. Insurance | 12 mos @ $51.41 | $616.92 | |
| | | | |
| SUB TOTAL ESCROWS | | $1,811.61 | |
| AGGREGATE ESCROW ADJ. | | $170.73- | |
| TOTAL ESCROW | | $1,640.88 | |

The loan will be funded as follows:

| | | | | |
|---|---|---|---|---|
| Loan Amount | $193,500.00 | BROKER FEES NOT DEDUCTED FROM WIRE! | | |
| LESS Lender Closing Fees | $730.63 | Broker: Professional Mortgage, Inc. | | |
| LESS Escrow | $1,640.88 | | Borrower | Seller |
| NET PROCEEDS DUE BORROWER | $191,128.49 | Broker Processing Fee | 450.00 | .00 |
| PLUS Mortgage Tax | $0.00 | | | |
| PLUS Assignment Recording Fees | $0.00 | | | |
| PLUS Broker Premium by Lender | $4,595.63 | | | |
| PLUS Attorney Fees | $0.00 | | | |
| PLUS Other | | | | |
| TOTAL AMOUNT OF WIRE | $195,724.12 | | | |

EXHIBIT

B

Doc #680024/ (4/2003)

## ADJUSTABLE RATE NOTE

### (12-MTA Index - Payment and Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __125.000%__ OF THE ORIGINAL AMOUNT (OR $ __241,875.00__ ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

__January 11, 2007__          __CHICAGO__               __Illinois__
                                            (City)                          (State)

__14516 Trumbull Ave, Midlothian, IL  60445__
                              (Property Address)

### 1. BORROWER'S PROMISE TO PAY

   In return for a loan that I have received, I promise to pay U.S. $ __193,500.00__ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is __HLB Mortgage__ _____ . I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2. INTEREST

   Interest will be charged on unpaid Principal until the full amount has been paid. I will pay interest at a yearly rate of __1.000__ % until __January 31, 2007__ , and the initial monthly payment provided for in Section 3(B) of this Note will be based on this rate (the "Initial Rate"). Commencing __February 1, 2007__ , I will pay interest at a yearly rate of __7.933__ % (the "Subsequent Rate"). Thereafter, the interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the interest rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

   **(A) Time and Place of Payments**

   I will pay Principal and interest by making payments every month. In this Note, unless otherwise specified "payment" refers to the Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

   I will make my monthly payments on __the 1st__ of each month beginning on __March 1, 2007__ . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on __February 1, 2037__ , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

   I will make my monthly payments at __PO Box 660029, Dallas, TX  75266-0029__ _____ , or at a different place if required by the Note Holder.

Page 1 of 6                               App# 0001574545                          AHM-

Doc # 944746/Image: 944746.prn

EXHIBIT

C

### (B) Amount of My Initial Monthly Payments

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $ _622.37_ , unless adjusted at an earlier time under Section 4(H) of this Note.

### (C) Payment Changes

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may further change on the _1st_ day of _March, 2007_ , and on that day every month thereafter.  Each such date on which my interest rate could change is called a "Change Date."

### (B) The Index

On each Change Date, my interest rate will be based on an Index.  The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields").  The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index".  If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ __Three_____ percentage points _3.000_ % ("Margin") to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.  In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined.  The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available).  This difference will be rounded to the next higher 1/8 of 1%.

### (D) Interest Rate Limit

My interest rate will never be greater than _Nine and 950 Thousandths_____ _____ percentage points _9.950_ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

### (E) Payment Change Dates

Effective every year commencing _March 1, 2008_____ , and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments.  The result of this calculation is the new amount of

my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amounts of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to __125.000%__ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that __125.000%__ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the Maturity Date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the ___Five___ anniversary of the due date of the first monthly payment, and on that same day every ___Five___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**Miscellaneous Fees:** I understand that the Note Holder will also charge a return item charge in an amount permitted and otherwise in accordance with Applicable Law in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of _____15_____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once for each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given to Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates

the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
Rosa Perez                  -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                               -Borrower

Loan #: 0001574545

## ADDENDUM TO NOTE
### (Prepayment)

THIS ADDENDUM is made this _____11th_____ day of **January, 2007**_____, and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1.    The Section in the Note entitled "Borrower's Right to Prepay" is modified to provide that I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any penalty. If within the first _three_ ( 3_____ ) year(s) after the execution of the Note, I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in a twelve month period immediately preceding the date of prepayment, I will pay a prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid which is in excess of twenty percent (20%) of the original principal amount of the Note in that twelve month period.  Interest will be calculated using the rate in effect at the time of prepayment.

If I make a partial prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month.  If I make a partial prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

2.    All other provisions *of* the Note are unchanged by this Addendum and remain in full force and effect.

**NOTICE TO THE BORROWER**
Do not sign this Note Addendum before you read it. This Note Addendum provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the Note.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.

_Rosa Perez_ (signature)
Rosa Perez

Multi-State Prepayment Rider
(Rev4-06)                                                          AHM-2034P(M

Doc # 945224/Image:945224.prn App# 0001574545

EXHIBIT

E ≠ D